ORIGINAL

ECF

FILED
SEP 17 2003
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| Tiger Natural Gas, Inc.<br><br>Plaintiff,<br>v.<br><br>The United States of America<br><br>Defendant. | No. 03-2201C |

**COMPLAINT**

This is a claim to recover withheld compensation owed by Defendant to Tiger Natural Gas, Inc.

**PARTIES AND JURISDICTION**

1. Plaintiff Tiger Natural Gas, Inc. ("TNG"), is an Oklahoma corporation with its principal place of business at 1422 East 71st Street, Suite J, Tulsa, Oklahoma 74136. TNG has several government contracts with the General Services Administration ("GSA") and other government agencies relating to the supply and sale of natural gas to federal facilities.

2. This claim arises under an express contract made between TNG and defendant, acting through Carol Lautzenheiser of the GSA, in October 2000. Pursuant to Section 10(a)(1) of the Contract Disputes Act of 1978, 41 U.S.C. § 609, TNG seeks a judgment by the Court of Federal Claims as to a dispute between TNG and GSA.

3. Jurisdiction of this action is conferred on this Court by 28 U.S.C. § 1491.

**FACTS**

4. In May 2000, GSA issued a "Notice Concerning Solicitation" (attached hereto as Exhibit A) for energy conservation services to reduce utility costs at GSA's Fort

Worth Federal Center. GSA sought installation of a propane back-up system at the Fort Worth Federal Center, and represented that it would qualify for an interruptible gas rate as a result of installation of the propane back-up system. Exhibit A at ¶B.2.d. GSA also represented it would recognize cost savings of $60,000 as a result of switching to an interruptible, industrial gas rate, and required offerors under the Notice to verify that this was a reasonable cost savings by contacting TXU Electric and Gas Corporation ("TXU"). Id. TNG contacted TXU as required.

5. Under "Rate Schedule 200" as filed with the Texas Railroad Commission governing TXU's customer rate eligibility (attached hereto as Exhibit B) and "Commercial Tariff 2083" (attached hereto as Exhibit C), at the time GSA sent out its Notice, GSA was classified as a "commercial" customer, which customer is generally subject to higher gas service rates than "industrial" customers. To qualify as an "industrial" customer under Rate Schedule 200, the customer must ordinarily be engaged in manufacturing, mining, oil and gas extraction, or electric generation. See Exhibit B at p.2. The exception to this requirement is where a commercial customer installs an energy back-up system (Id.) (required because all industrial service is interruptible) and requests that it be assigned an industrial rate. In those instances, TXU (upon information and belief) can and will execute an industrial, interruptible gas rate contract with that customer.

6. In June 2000, TNG submitted to GSA its Technical and Price Proposals (attached hereto as Exhibit D) as required by the Notice. The proposals set forth estimates of savings to be realized by GSA as a result of installation of the propane back-up system and switching to an interruptible, industrial gas rate. See "Yearly Savings

Explanation" attached to Technical Proposal. The estimates were based upon a yearly gas consumption figure of 36,946 mcf, Id., which figure had been supplied to TNG by GSA.

7. In July 2000, GSA sent a letter to TNG (attached hereto as Exhibit E) requesting, *inter alia,* additional information regarding TNG's method of verifying the estimated annual cost savings of $60,000 per year and several other items set forth in TNG's proposals, and inquiring whether TNG could provide GSA a guarantee of savings. TNG responded by letter to GSA (attached hereto as Exhibit F), stating that TNG had reviewed past natural gas usage for the Fort Worth Federal Center, and that local LDC rates had been established for both commercial and industrial facilities. TNG further stated that with the propane back-up system in place, the facility would be eligible to purchase gas at an interruptible, industrial gas rate. TNG advised GSA, however, that it could not guarantee the savings to GSA in the absence of information regarding future LDC rates, transportation rates, building occupancy rates, or the natural gas industry in general.

8. In August 2000, GSA sent a letter to TNG (attached hereto as Exhibit G) once again inquiring whether TNG could guarantee the savings GSA would realize from installation of the propane back-up system. In September 2000, TNG wrote back to GSA (letter attached hereto as Exhibit H) advising GSA once again that TNG could not guarantee a savings to GSA unless GSA could guarantee that consumption at the Fort Worth Federal Center would stay at 36,946 mcf per year as indicated in GSA's 1996-1997 consumption records. TNG provided GSA with supplemental schedules of yearly savings based on historic consumption in fiscal years 1999 and 2000 (attached to Exhibit

H), which showed that if future consumption was comparable to those years, GSA would experience net losses, as opposed to savings. Both the original schedule showing a net savings to GSA (attached to Exhibit D) and the supplemental schedules showing a net loss to GSA (attached to Exhibit H) were based upon the assumption and representation that GSA would switch to an interruptible, industrial gas rate.

9. In October 2000, GSA awarded to TNG the contract for installation of the Fort Worth Federal Center propane back-up system. (See Exhibit I attached hereto).

10. TNG completed installation of the Fort Worth Federal Center propane back-up system on March 21, 2001. Prior to that date, a representative of TXU had toured the installation to verify that it would be eligible for an industrial, interruptible gas rate. TNG was paid in full by GSA under the terms of the contract.

11. On or before March 23, 2001, TXU had contacted TNG to determine if, subsequent to installation of the propane back-up system, TNG would be supplying the Fort Worth Federal Center with gas. TNG then requested that TXU contact GSA to set up a standard gas transportation agreement used for federal agencies.

12. On information and belief, TXU subsequently contacted GSA regarding execution of the standard gas transportation agreement used for federal agencies.

13. In July 2001, TXU sent GSA a standard contract for industrial gas service with an attached agreement for interruptible gas transportation (attached hereto as Exhibit J). GSA refused to enter into the agreements with TXU, allegedly because of the presence of a curtailment indemnification clause in those agreements which GSA claimed was contrary to federal law, despite the fact that the Contract specifically stated that it "shall be subject to all applicable State and Federal laws, and orders, directives, rules and

regulations of any governmental body, official or agency having jurisdiction over Transporter or this [Contract]" (Exhibit J at 14, ¶6.1), and despite the fact that (upon information and belief) at least twelve substantially identical TXU contracts containing substantially identical indemnification clauses had already been approved and executed by other divisions of GSA and the federal government.

14. Upon information and belief, GSA has never obtained an industrial gas rate contract, and has never switched to an interruptible, industrial gas rate. However (upon information and belief) GSA was continuing to negotiate with TXU for a gas transportation agreement as recently as January 2003.

15. In July 2002, GSA sent a letter to TNG (attached hereto as Exhibit K) advising TNG that GSA had not realized the "guaranteed savings" allegedly represented by TNG, and demanded payment of $37,296.73 from TNG for savings allegedly not realized from April 2001 to July 2002. GSA, in making its demand for payment, cited TNG's contract (See Exhibit I).

16. Subsequent to receiving GSA's demand letter, TNG contacted GSA in an attempt to resolve the situation. TNG once more advised GSA that unless GSA changed to an interruptible, industrial gas rate, GSA would not realize the estimated savings in TNG's proposals (See Exhibit L attached hereto.)

17. In September 2002, GSA sent a letter to counsel for TNG (attached hereto as Exhibit M) claiming that TNG had guaranteed GSA savings of $29,837.38 per year from installation of the Fort Worth Federal Center propane back-up system, and demanded payment of $37,783.17 from TNG covering April 2001 to date, including interest.

18. In or about March 2003, to satisfy GSA's demand for payment, GSA made a decision to setoff payments totaling $30,556.61 from funds owed to TNG on unrelated GSA invoices. On April 2, 2003, upon information and belief, GSA unintentionally made payment to TNG on these invoices due to inter-office miscommunication.

19. On September 3, 2003, TNG employee Teresa Kepke had telephone conversations with Billy Joe Coates and Brooke Cox from the GSA Greater Southwest Finance Center. During these conversations, GSA notified TNG that GSA intended to "cancel" certain of TNG's pending invoices as to GSA accounts. The total amount owed upon the invoices identified as cancelled is $19,795.49.

20. On September 9, 2003, Ms. Kepke and Ms. Cox had another telephone conversation. During this conversation, GSA notified TNG that it intended to withhold an additional $9,789.32 from another one of TNG's pending invoices.

**COUNT ONE**
**(Request for Declaratory Relief)**

21. TNG adopts and realleges the allegations of paragraphs 1 through 20 of this Complaint.

22. There exists an actual controversy between TNG and GSA with regard to the rights and obligations under the contract for installation of the Fort Worth Federal Center propane back-up system.

23. TNG did not guarantee any cost savings to GSA as a result of installation of the Fort Worth Federal Center propane back-up system.

24. All savings estimates made by TNG were conditioned upon representations by GSA that subsequent to installation of the system GSA would switch

to an interruptible, industrial gas rate, and that any cost savings not realized by GSA are a result of it own failure to obtain an interruptible, industrial gas rate contract.

25. GSA may not rely upon its own failure and omission to act as a basis for recovering from TNG.

26. TNG is entitled to an order relieving it from any liability to GSA for any cost savings allegedly not realized as a result of installation of the Fort Worth Federal Center propane back-up system.

**COUNT TWO**
**(Request for Release of Funds Setoff by GSA)**

27. TNG adopts and realleges the allegations of paragraphs 1 through 26 of this Complaint.

28. TNG is entitled to the release of all compensation setoff by GSA from TNG's invoices based on the facts described in this Complaint.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Tiger Natural Gas, Inc. respectfully requests that judgment be entered in its favor and against Defendant the United States of America as follows:

(A) declarations as set forth in paragraphs 21 through 26, above;

(B) payment of the $29,584.81 that GSA has withheld from TNG invoices, or such greater amount as may be appropriate, with interest as provided by law;

(C) the costs of this action, including reasonable attorneys fees, as permitted by law;

(D) all other relief which the Board deems is appropriate.

DATED this 16th day of September, 2003.

Respectfully Submitted,

Sandeep Kathuria, Esq.
General Counsel
Tiger Natural Gas, Inc.
1422 East 71st Street, Suite J
Tulsa, Oklahoma 74136
(918) 491-6998 (telephone)
(918) 491-6659 (facsimile)
skathuria@tigernaturalgas.com