TIGER NATURAL GAS
018

# Technical Proposal

Project: Propane Backup System
Fort Worth, Texas

Solicitation No.: GS-07P-00-HHC-0066
Solicitation Date: May 17, 2000



Prepared For:

General Services Administration
Special Services Division (7PMA)
819 Taylor Street, Room 11A01
Fort Worth, TX 76102-6105
Attn: Pia Heiges

June 19, 2000

# "Technical Proposal"

| | | | |
|---|---|---|---|
| **Offerer:** | Tiger Natural Gas, Inc.<br>1 West 41st, Suite G<br>Sand Springs, OK 74063 | **Contractor:** | GSA<br>819 Taylor, Rm 11A01<br>Fort Worth, TX 76102 |
| **Phone:**<br>**Fax:** | (918)491-6998<br>(918)245-3651 | **Solicitation Date:**<br>**Contract No.:** | May 17, 2000<br>GS-07P-00-HHC-0066 |

## I. ECM Description and Energy Savings

### a. Title and Executive Summary

The ECM plant shall consist of a backup propane-air system capable of providing the facility a full capacity load of three days, running at 25,000 cubic feet per hour of 1,000 Btu natural gas at 15.5 psig. The equipment will consist of a 18,000 gallon tank, waterbath vaporizer, venturi blender, HP dual pump system and all couplings, valves, gauges, thermometer, regulators and hose connectors necessary to properly install and run the system. This will also include the engineering design, specifications and drawings for the system, painting of the fabricated equipment, fencing and gates, gravel within the fenced area, guard post, operating manuals and start-up & training.

### b. ECM Interface with Government Equipment

The interface between the ECM and present Government equipment shall be ECM located within 60 feet of the current meter house. The ECM shall be tied in to the existing two lines which feed the two sections of the Federal Building. Once the ECM is in place and connected to the existing gas transport lines, the ECM can be utilized by turning the equipment on by push button method, and opening of supply valve to piping. The higher pressure induction of propane air shall automatically shut off upstream natural gas supply.

### c. Manufacturer's Equipment and Information

The manufacturer of equipment shall be Plant Systems, Incorporated located in Cleveland Ohio. The telephone number of PSI is 216-235-5700. Equipment Identification shall be submitted for all equipment should Tiger Natural Gas, Inc. be awarded a contract.

**d. Physical Changes**

Physical changes of the area shall be excavation, and installment of Tank/Equipment foundation and backfill.

**e. Utility Interruptions and Other Agency Support Required**

Generally utility interruptions are not required. However, in certain instances utility interruption may not be avoided. Therefore, natural gas flow could be interrupted for up to 4 hours. Should interruption be neccessary, interruption will occur during non-business hours.

**f. Environmental Protection**

Resource Use
The proposed ECM shall utilize liquid propane as its resource which shall be stored in an above ground storage tank.

Waste Production
The ECM shall not produce any by products in regulated amounts. The only by product produced by the system will be carbon monoxide from test flare.

Mitigation Measures
The ECM system shall be installed in accordance with all rules and regulations governing above ground storage tanks and liquid propane. Overflow devices and spill prevention shall be accounted for in the construction of the ECM.

Environmental Regulations
The ECM facility shall conform to the requirements of NFPA #58: Storage and Handling of Liquified Petroleum Gases, NFPA #54: National Fuel Gas Code, NFPA #70: National Electrical Code, and the State of Texas rules and regulations.

**g. ECM Installation Schedule**

The entire project should be completed within a timeframe of 70 days from award of contract. Refer to the following chart for complete details.




## II. Management Approach

a. Organization

The management approach shall be as follows: Tiger Natural Gas, Inc. shall be the overall project manager for this project. Mr. Bradley O. Johnson shall coordinate and supervise all activities for ECM installment. The subcontractor "PSI" shall supply TNG with an installment projection of all activities which shall be coordinated with the GSA through TNG.

**b. Personnel Qualifications**

"Organizational Chart"

Tiger Natural Gas, Inc.
Prime Contractor
Field Superintendent, Bradley O Johnson

Bradley O. Johnson; Mr. Johnson has over 10 years of experience in the installation and construction of aboveground storage tank systems and 15 years experience in the environmental and OSHA realm of laws and regulations. Mr. Johnson has been performing OSHA and EPA compliance audits on commercial, private, and industrial sites for the past 10 years. The Field Superintendent shall be responsible for overall compliance with bid specifications on installment of ECM. The field superintendent shall be the laison for all work to be conducted by all subcontractors for the GSA.

SubContractor
Plant Systems, Inc.
PO Box 38308
7993 Lewis Road
Berea, OH 44017
216-235-5700

Plant Systems, Inc. shall fabricate and install ECM facility. PSI shall have on-site one field superintendent for ECM construction. The field superintendent shall coordinate directly with TNG field superintendent for all activities. Plant Systems, Inc. project personnel shall be as follows:

William J. Young, Vice President; Mr. Young has 37 years of experience in the gas industry. For 16 years, he was a principal officer of Alternate Energy Installations, involved in the sale, design, engineering, construction, manufacture and service of LP-Gas equipment in domestic and foreign markets. Prior to that, he was manager of Specialty Sales (standby systems) for Ugite Gas, Inc. (now Amerigas).
Mr. Young is a member of the National Propane Gas Association Technology and Standards Committee which is responsible for writing the National Code for propane systems (NFPA #58). He also serves as Chairman of two American National Standards Institute Subcomittees for gas consuming equipment. He is a member of NFPA Committee on Gases (NFPA #58) and a member of NFPA Subcommittee on Utility Plants.

Ronald T. Fritz, Project Manager; Ron Fritz has 40 years of engineering experience, having worked for Davy McKee, National Engineering and Alternate Energy Installations.

T. Vargo, Construction Superintendent; Mr. Vargo has 25 years experience in the gas industry, installing and servicing gas equipment.

**c. Subcontracting Plan**

1. Subcontract compliance management shall be overseen by Mr. Bradley O. Johnson at all phases of ECM installation. Mr. Johnson shall be the Contract Laison with the GSA on all activities. Approximately 45% of the work shall be performed by the subcontractor Plant Systems, Inc.. Mr. Johnson shall remain on-site from beginning to completed ECM installation. Mr. Johnson shall conduct daily OSHA compliance inspections to ensure that regulatory compliance is maintained.

2. The following is the list of subcontractors to be utilized for the completion of ECM installment:

Plant Systems, Inc.
7993 Lewis Road
Berea, OH 44017

Plant Systems, Inc. specializes in the design and turnkey installation of propane air standby and/or peak shaving facilities used to replace or suplement natural gas supply requirements. In addition, Plant Systems, Inc. designs and installs bulk storage and distribution facilities.

3. Subcontractor substitution plans are as follows:

In the event that the subcontractor cannot fullfill obligations of contract another contractor shall be utilized. Tiger Natural Gas, Inc. has received several subcontractor pricing submittals with emergency clauses for immediate implimentation if required.

## III. Operations, Maintenance, and Training Approach

### a. Organization

Tiger Natural Gas, Inc. shall utilize the subcontractor Plant Systems, Inc. for all yearly maintenance operations. A local contractor shall be selected at a later date for emergency maintenance. All additional information shall be furnished to the GSA prior to completion of ECM installment.

### b. Operation, Maintenance, and Repair

Operations and maintenance of the ECM shall be conducted once per year by the subcontractor Plant Systems, Inc.. Should any emergency arise that requires immediate maintenance of the ECM, a local contractor shall be utilized.

### c. Government Operations and Maintenance

The government shall only assume operations and maintenance of the ECM upon contract completion. Once the contract is complete, the government will have to maintain the equipment which shall consist of replacement of valves, electrical equipment, and propane re-fill when required.

**d. Preventive Maintenance**

Tiger Natural Gas, Inc. shall conduct yearly inspections of the ECM as follows:

1. Conduct annual startup of system.
2. Observe ECM during startup and replace any faulty equipment.

**e. Response to Service Calls**

Tiger Natural Gas, Inc. shall respond to service calls within the time period stipulated by the contract. A local contractor shall be utilized for service calls that need attention within a 8 hour period. For service calls that do not require immediate attention, Plant Systems, Inc. shall be utilized.

**f. Training for Government Employees**

**Startup Training**

A qualified field service representative will provide starup and training services for up to two days on-site. Startup training shall consist of complete operations for the ECM including shutdown of the system. This training shall consist of one day of classroom training and one day of ECM field site training.

**IV. Past Performance & Project Experience**

The following information describes prior work that demonstrates Tiger Natural Gas, Inc's ability to implement and manage the work being proposed:

| Project | Contact | Phone | Date |
|---|---|---|---|
| Dry-Clean Supercenter Installation of Propane Air backup system. | Ginger Cleavelin | 918-660-0743 | 2-15-97 |
| VA Utilities | Bill Mitten | 360-905-1735 | 1995 - present |
| CITGO Petroleum Fox & Walden, Inc. Storage Tank Compliance | Leia Walden | 918-747-5451 | 1996 - present |

The following information describes prior work that demonstrates Plant Systems, Inc's ability to implement and manage the work being proposed:

| **Project** | **Contact** | **Phone** | **Date** |
|---|---|---|---|
| Petroleum Source for federal penitentiary, Yazoo, MS | Jim Sobery | 404-321-5711 | 5-96 |
| Owens Brockway Glass Container Vernon, CA | Mike Bodner | 419-255-6101 | 7-95/1-96 |
| Laurens, SC Commission of Public Works | Coleman Smoak | 803-984-0481 | 9-95/3-96 |

This Price Proposal has been submitted by:

Bradley O. Johnson, Env. Manager
Tiger Natural Gas, Inc.

T.X.4

# *Yearly Savings Explanation*

GSA Dallas/Ft Worth Federal Building savings has been based on the following information supplied by the Local Distribution Company (LDC) Lonestar Gas.

At the present time the Federal Building is purchasing gas and transportation under a commercial rate. The savings by switching over from commercial rates to industrial rates is as follows based on an average yearly consumption of 36,946 Mcf.

| | |
|---|---|
| **Commercial Rate** | **$ 179,996.94** |
| **Industrial Rate** | **$ 150,504.32** |
| **Savings per year** | $ 29,492.62 |

By switching over from a Firm Rate to an Interruptible Rate, the savings would be as follows based on an average yearly consumption of 36,946 Mcf.

| | |
|---|---|
| **Firm Rate** | **$ 1.5800** |
| **Interruptible Rate** | **$ 0.5800** |
| **Savings Per Mcf** | **$ 1.0000** |
| **36,946 Mcf per year Firm Rate** | **$ 58,374.68** |
| **36,946 Mcf per year Int. Rate** | **$ 21,428.68** |
| **Savings per year** | $ 36,946.00 |
| ***Interrupt Rate Yearly Savings** | **$36,946.00** |
| ***Industrial Rate Yearly Savings** | **$29,492.62** |
| Total Yearly Savings Is | $ 66,438.62 |

*NOTE: Should the Federal Building start purchasing gas from a third party (TIGER NATURAL GAS), additional savings of $4,000.00 to $8,000.00 could be recouped on a yearly basis. Thus, increasing the Federal Building yearly savings between $70,438.00 to $74,438.00

# Price Proposal

## Project: Propane Backup System
## Fort Worth, Texas

## Contract No.: GS-07P-00-HHC-0066
## Solicitation Date: May 17, 2000



## Prepared For:

General Services Administration
Special Services Division (7PMA)
819 Taylor Street, Room 11A01
Fort Worth, Texas 76102

June 19, 2000

TIGER Natural Gas Inc.
1-G West ...
Sand Springs, Oklahoma 74063
918 245-...
918 245-2951
Minority Owned / Native American Woman

June 19, 2000

General Services Administration
Special Services Division (7PMA)
Attn: Pia Heiges
819 Taylor Street, Room 11A01
Fort Worth, TX 76102-6105

RE: Representations and Certifications

Dear Pia Heiges:

Tiger Natural Gas, Inc shall also represent itself as a Hubzone Company. At this time we would request that TNG is awarded the following preferences when considered for solicitation number GS-07P-00-HHC-0066.

Preferences:

Small Disadvantage SBA 8a = 10%
Hubzone = 10%

Total preference in accordance with 13 CFR would be 20%

Should you have any questions please contact me at my office.

Sincerely,

[signature]

Bradley O Johnson
Environmental Manager

# "Price Proposal"

**Offerer:** Tiger Natural Gas, Inc.
1 West 41st, Suite G
Sand Springs, OK 74063

**Contractor:** GSA
819 Taylor, Rm 11A01
Fort Worth, TX 76102

**Phone:** (918)491-6998
**Fax:** (918)245-3651

**Solicitation Date:** May 17, 2000
**Contract No:** GS-07P-00-HHC-0066

**Offers are valid for ninety (90) days from due date of solicitation.**

I. **Financial Management Plan**

a. Types of Financing; Tiger Natural Gas, Inc. shall finance this project by utilizing a bank loan in the amount of installation, at 10% annual percentage.

b. Sources of Financing; Tiger Natural Gas, Inc. shall utilize the following banking institution for financing of project:

Citizens Bank of Tulsa
Eric Bohne, President
P.O. Box 27127
Tulsa, OK 74129
Phone: (918)582-2600

REFER to enclosed letter dated February 6, 1998 in Section J.

c. Use of investment banking services; refer to b.

d. Intent to Transfer; Tiger Natural Gas, Inc. does not intend to transfer contract.

e. Key Personnel on project management team; Tiger Natural Gas, Inc. Key Finance Personnel are as follows:

Lori A. Johnson, President
Debbie Smith, Treasurer
Teresa Walker, CPA/Accountant

## II. Project Financing Experience

Tiger Natural Gas, Inc. shall utilize Lori A. Johnson as the key financial person. Mrs. Johnson has had extensive experience in financing projects that exceed a yearly gross amount of four (4) million dollars. These projects are refinanced on an annual basis with terms of 3 to 5 years in length.

*Description of Energy Services Provided:*
Tiger Natural Gas, Inc. has funded and provided services for projects from natural gas, propane, and propane air supply for numerous private, commercial, and governmental agencies for the past 8 years.

*Capitol Investment:*
Capitol Investment of 3.5 to 5.0 million dollars yearly.

*Source & Type of Financing:*
Tiger Natural Gas, Inc. has been conducting financial business with Citizens Bank of Tulsa for the past 8 years. Citizens Bank has aided Tiger Natural Gas, Inc. with letters of credit and loans as financial backing for performance of services offered by Tiger Natural Gas, Inc..

*Client and Point of Contact:*
The financial institution "Citizens Bank of Tulsa" contact is:

Eric M. Bohne, President
(918)582-2600

## III. Financial Status

Refer to enclosed financial statements.

# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS

*Offeror to Complete Blocks 12, 17, 23, 24, & 30*

1. Requisition Number: 7PTA-00-2617
PAGE 1 OF 1

2. Contract No.:
3. Award/Effective Date:
4. Order Number:
5. Solicitation Number: GS-07P-00-HHC-0066
6. Solicitation Issue Date: May 17, 2000

7. For Solicitation Information Call: a. Name: Pia Heiges, pia.heiges@gsa.gov
b. Telephone No (*No collect calls*): (817)978-3849
8. Offer Due Date/Local Time: June 20, 2000 / 5:00 PM

9. Issued By — Code 7PTA
GSA, PBS, Special Services Branch
Acquisition Services (7PMA)
819 Taylor St., Rm. 11A01
Fort Worth, TX 76102

10. THIS ACQUISITION IS:
[X] Unrestricted
[ ] Set-Aside % for
[ ] Small Business
[ ] Small Disadv. Business
[ ] 8(A)
SIC: 4932
Size Standard:

11. Delivery for FOB Destination: [ ] See Schedule

12. Discount Terms: Ø

[ ] 13a. This contract is a rated order under DPAS(15 CFR 700)
13b. Rating

14. Method of Solicitation: [ ] RFQ [ ] IFB [X] RFP

15. Deliver To — Code 7PTA
GSA, PBS, Special Services Branch
Acquisition Services (7PMA)
819 Taylor St., Rm. 11A01
Fort Worth, TX 76102

16. Administered By — Code 7PMA
GSA, PBS, Special Services Branch
Acquisition Services (7PMA)
819 Taylor St., Rm. 11A01
Fort Worth, TX 76102

17a. Contractor/Offeror — Code — Fac Code
Tiger Natural Gas, Inc.
1 W. 41st, Suite G
Sand Springs, OK 74063
Phone No. 918-245-5500 TIN: 73-138-2603

18a. Payment Will Be Made By — Code

17b. Check below if remittance is different and put such address in offer. [ ]

18b. Submit invoices to address shown in block 18a unless box below is checked. [ ] See Addendum.

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | | | | | |

25. Accounting and Appropriation Data

26. Total Award Amount (*For Govt. Use Only*)

[ ] 27a. Solicitation incorporates by reference FAR 52.212-1, 52.212-4, FAR 52.212-3 and 52.212-5 are attached addenda [ ] are [X] are not attached
[ ] 27b. Contract/Purchase Order incorporates by reference FAR 52.212-4, 52.212-5 is attached addenda [ ] are [ ] are not attached

28. [ ] Contractor is required to sign this document and return copies to issuing Office. Contract agrees to furnish and deliver all items set forth or otherwise identified above and on any additional sheets subject to the terms and conditions specified herein.

29. [ ] Award date of contract reference offer dated . Your offer on Solicitation (Block 5), including any additions or changes which are set forth herein, is accepted as to items:

30a. Signature of Offeror/Contractor: [signature]

31a. United States of America (*Signature of Contracting Officer*)

30b. Name and Title of Signer (*Type or Print*)
30c. Date Signed

31b. Name of Contracting Officer (*Type or Print*)
31c. Date Signed

32a. Quantity in Column 21 has been
[ ] Received [ ] Inspected [ ] Accepted and Conforms to the Contract Except as Noted

33. Ship Number: [ ] Partial [ ] Final
34. Voucher Number
35. Account Verified Correct

32b. Signature of Authorized Govt. Representative
32c. Date

36. Payment: [ ] Complete [ ] Partial [ ] Final
37. Check Number

38. S/R Account No.
39. S/R Voucher No.
40. Paid By

41a. I certify this account is correct and proper for payment
41b. Signature and Title of Certifying Officer
42c. Date

42a. Received By (*Print*)
42b. Received At (*Location*)
42c. Date Rec'd
42d. Total Containers

Authorized for Local Reproduction

# Section B

## Schedules 1 through 5

Ft. Worth, TX

Offeror Name Tiger Natural Gas Inc

# SCHEDULE 1

| Propane Backup System | | | | |
|---|---|---|---|---|
| Line Item | Year | (a) Estimated Annual Cost Savings $ | (b) Annual Contractor Payments $ | (c) Estimated Government Share of Cost Savings $ (a - b = c) |
| 0001AA | ONE | 60,000 | 48,000 | 12,000 |
| 0001AB | TWO | 60,000 | 48,000 | 12,000 |
| 0001AC | THREE | 60,000 | 48,000 | 12,000 |
| 0001AD | FOUR | 60,000 | 48,000 | 12,000 |
| 0001AE | FIVE | 60,000 | 48,000 | 12,000 |
| 0001AF | SIX | 60,000 | 48,000 | 12,000 |
| 0001AG | SEVEN | 60,000 | 48,000 | 12,000 |
| 0001AH | EIGHT | 60,000 | — | 60,000 |
| 0001AI | NINE | 60,000 | — | 60,000 |
| 0001AJ | TEN | 60,000 | — | 60,000 |
| 0001A | TOTALS | 600,000 | 288,000 | 312,000 |

(a) The technical proposal supports this estimate of annual cost savings as "REASONABLE"

(b) The total of the column represents the contract price and should be supported by information submitted in Schedules 3 and 4.

**The offeror shall complete the following statement:**

If selected, the offeror shall complete the installation of the proposed ECM not later than __________ calendar days after the Notice to Proceed.

# SCHEDULE 2

## ECM - Simple Payback Calculation

| A<br>ECM Cost ($) | B<br>Annual Cost Savings ($) | C<br>(A/B = C)<br>ECM Simple Payback (Years) |
|---|---|---|
| 210,000 | $60,000 | 3.5 |
| TOTAL | $60,000 | |

-C-0066
Ft. Worth, TX

Offeror Name Tiger Natural Gas, Inc.

## SCHEDULE 3

| Annual Contractor Payment Allocation | | | |
|---|---|---|---|
| Line Item | Year | Installation Phase (a) Investment Amortization & Debt Service $ | Service Phase (b) Annual Contract Expenses $ |
| 0003AA | ONE | 48,000 | 35,000 |
| 0003AB | TWO | 48,000 | 35,000 |
| 0003AC | THREE | 48,000 | 35,000 |
| 0003AD | FOUR | 48,000 | 35,000 |
| 0003AE | FIVE | 48,000 | 35,000 |
| 0003AF | SIX | 48,000 | 35,000 |
| 0003AG | SEVEN | Ø | 35,000 |
| 0003AH | EIGHT | Ø | Ø |
| 0003AI | NINE | Ø | Ø |
| 0003AJ | TEN | Ø | Ø |
| 0003A | TOTALS | 288,000 | 210,000 |

Offeror Name Tiger Natural Gas, Inc.

# SCHEDULE 4

| Cancellation Ceilings | | |
|---|---|---|
| Line Item | Time Period | Cancellation Ceiling ($) |
| 04AA | After Installation and Acceptance of ECM | 210,000 |
| 04AB | After ECM Acceptance - End of Year One | 162,000 |
| 04AC | After ECM Acceptance - End of Year Two | 114,000 |
| 04AD | After ECM Acceptance - End of Year Three | 66,000 |
| 04AE | After ECM Acceptance - End of Year Four | 18,000 |
| 04AF | After ECM Acceptance - End of Year Five | 18,000 |
| 04AG | After ECM Acceptance - End of Year Six | Ø |
| 04AH | After ECM Acceptance - End of Year Seven | |
| 04AI | After ECM Acceptance - End of Year Eight | |
| 04AJ | After ECM Acceptance - End of Year Nine | |
| 04AK | After ECM Acceptance - End of Year Ten | |

Cancellation Ceilings for each time period establish the maximum termination liability of the Government in the event of cancellation of items or termination for convenience of the Government. FAR 52.217-2 or 52.249-2 will apply.

GS-07P-00-HHC-0066
Ft. Worth, TX

Offeror Name Tiger Natural Gas, Inc.

## SCHEDULE 5

| Sample Contractor Cash Flow For Energy Service Performance Contract | | | | | | |
|---|---|---|---|---|---|---|
| | 20__ | 20__ | 20__ | 20__ | 20__ | -- |
| Project Revenues<br>. Government Payments<br>Utility Payments (if applicable) | | | | | | |
| Total Cash Available | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 |
| Financing Costs | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| Debt Service Payments | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 |
| Cash Available for Project Expenses | | | | | | |
| Project Expenses | | | | | | |
| Management | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Operations | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Maintenance/Repairs | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| Fuels | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 |
| Consumables | Ø | Ø | Ø | Ø | Ø | Ø |
| Inspect/Test/Permits | 1,500 | 1500 | 1500 | 1500 | 1500 | 1500 |
| Insurance | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| Property Taxes | Ø | Ø | Ø | Ø | Ø | Ø |
| Project Expenses/Cash Disbursements | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 |
| TOTAL NET CASH | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |

**Provide Assumptions used in Cash Flow such as:**

Capital Investment financed 210,000

Financing Rate 10 %

Escalation rate for project expenses Ø %

**Contractor Guarantee:**

I, [signature] as a principal of Tiger Natural Gas, Inc.
Name Company Name

certify and guarantee, that, upon completion and acceptance of the terms and conditions of this contract, the General Services Administration will be eligible for an interruptible gas rate at the Fort Worth Federal Center.

# Section J

## SF 25, Performance Bond
## SF 25A, Payment Bond

# PERFORMANCE BOND

*(See instructions on reverse)*

DATE BOND EXECUTED *(Must be same or later than date of contract)*

OMB No.: 9000-0045
Expires: 09/30/98

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

PRINCIPAL *(Legal name and business address)*

TO Be forwarded if Awarded Contract

TYPE OF ORGANIZATION *("X" one)*

☐ INDIVIDUAL ☐ PARTNERSHIP
☐ JOINT VENTURE ☐ CORPORATION

STATE OF INCORPORATION

SURETY(IES) *(Name(s) and business address(es))*

PENAL SUM OF BOND

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| | | | |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The Principal has entered into the contract identified above.

THEREFORE:

The above obligation is void if the Principal -

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

WITNESS:

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

PRINCIPAL

| | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | 3. | |

INDIVIDUAL SURETY(IES)

| | | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) *(Typed)* | 1. | 2. |

CORPORATE SURETY(IES)

| SURETY A | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition not usable

STANDARD FORM 25 (REV. 5-96)
Prescribed by GSA-FAR (48 CFR) 53.228(b)

CORPORATE SURETY(IES) *(Continued)*

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| BOND PREMIUM ▶ | RATE PER THOUSAND ($) | TOTAL ($) |
|---|---|---|
| | | |

## INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

| PAYMENT BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) | OMB No.: 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

| | | | | |
|---|---|---|---|---|
| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) ☐ INDIVIDUAL ☐ PARTNERSHIP ☐ JOINT VENTURE ☐ CORPORATION | | | |
| | STATE OF INCORPORATION | | | |
| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND | | | |
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| | CONTRACT DATE | CONTRACT NO. | | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

**PRINCIPAL**

| | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| | | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) (Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

| | | | | | |
|---|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

**CORPORATE SURETY(IES) *(Continued)***

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25A (REV. 10-98) BACK

# Section K

# Representations and Certifications

# PART IV - REPRESENTATIONS AND INSTRUCTIONS

## SECTION K - REPRESENTATIONS, CERTIFICATIONS AND STATEMENTS OF OFFERORS

### K.1 REMITTANCE ADDRESS

When the Contractor wishes payments to be mailed to an address other than that shown on the Standard Form 33, Solicitation, Offer and Award, he/she shall insert the proper remittance address in the space provided below:

Tiger Natural Gas, Inc.
Environmental Division
1-G W. 41st
Sand Springs, OK 74063

### K.2 PERIOD OF ACCEPTANCE OF OFFER

In compliance with the solicitation, the offeror agrees, if this offer is accepted within 90 calendar days from the date specified in the solicitation for receipt of offers, to furnish any or all items in which prices are offered at the price set opposite each item, delivered at the designated point(s), within the time specified in the Schedule.

### K.3 AUTHORIZED NEGOTIATORS

The offer represents that the following persons are authorized to negotiate on its behalf with the Government in connection with this request for proposals or quotations: (list names, titles, and telephone numbers of authorized negotiators.)

| NAME | TITLE | PHONE NO. |
|---|---|---|
| Brad Johnson | Environmental Manager | 918-245-5500 |
| Lori Johnson | President | 918-245-5500 |
| | | |

| Representations and Certifications<br>Name and Address of Offeror (Name, Street, City, State and Zip Code) | Solicitation No.<br>Date of Offer |
|---|---|
| Tiger Natural Gas, Inc.<br>1-G W. 41st<br>Sand Springs, OK 74063 | GS-07P-00-HHC-0066<br>6-19-2000 |

"SOLICITATION" MEANS "INVITATION FOR BIDS" IN SEALED BIDDING AND "REQUEST FOR PROPOSAL" OR "REQUEST FOR QUOTATION" IN NEGOTIATION.

"OFFER MEANS "BID" IN SEALED BIDDING AND "PROPOSAL" IN NEGOTIATION. "OFFEROR" MEANS THE PERSON OR FIRM SUBMITTING THE OFFER.

**THE OFFEROR MAKES THE FOLLOWING REPRESENTATIONS AND CERTIFICATIONS AS PART OF THE OFFER IDENTIFIED ABOVE. (CHECK APPROPRIATE BOXES AND FILL IN THE BLANKS.)**

**1. FAR 52.204-3 Taxpayer Identification (OCT 1998)**

(a) *Definitions.*

"Common parent," as used in this provision, means that corporate entity that owns or controls an affiliated group of corporations that files its Federal income tax returns on a consolidated basis, and of which the offeror is a member.

"Taxpayer Identification Number (TIN)," as used in this provision, means the number required by the Internal Revenue Service (IRS) to be used by the offeror in reporting income tax and other returns. The TIN may be either a Social Security Number or an Employer Identification Number.

(b) All offerors must submit the information required in paragraphs (d) through (f) of this provision to comply with debt collection requirements of 31 U.S.C. 7701(c) and 3325(d), reporting requirements of 26 U.S.C. 6041, 6041A, and 6050M and implementing regulations issued by the IRS. If the resulting contract is subject to the payment reporting requirements described in Federal Acquisition Regulation (FAR) 4.903, the failure or refusal by the offeror to furnish the information may result in a 31 percent reduction of payments otherwise due under the contract.

(c) The TIN may be used by the Government to collect and report on any delinquent amounts arising out of the offeror's relationship with the Government (31 U.S.C. 7701(c)(3)). If the resulting contract is subject to the payment reporting requirements described in FAR 4.904, the TIN provided hereunder may be matched with IRS records to verify the accuracy of the offeror's TIN.

(d) *Taxpayer Identification Number (TIN).*

☒ TIN: 73 138 2603
☐ TIN has been applied for.
☐ TIN is not required because:

☐ Offeror is a nonresident alien, foreign corporation, or foreign partnership that does not have income effectively connected with the conduct of a trade or business in the United States and does not have an office or place of business or a fiscal paying agent in the United States;

Revised 04/18/00

☐ Offeror is an agency or instrumentality of the Federal government.

(e) *Type of organization.*

☐ Sole proprietorship;

☐ Partnership;

☒ Corporate entity (not tax-exempt);

☐ Corporate entity (tax-exempt);

☐ Government entity (Federal, State or local);

☐ Foreign government;

☐ International organization per 26 CFR 1.6049-4;

☐ Other________________________________

(f) *Common Parent.*

☒ Offeror is not owned or controlled by a common parent as defined in paragraph (a) of this provision.

☐ Name and TIN of common parent:

Name__________________________

TIN__________________________

2. FAR 52.204-5 **Women-Owned Business (Other than Small Business) (MAY 1999)** *(Complete if procurement is not set aside for small business concerns)*

(a) *Definition.* Women-owned business concern, as used in this provision, means a concern that is at least 51 percent owned by one or more women; or in the case of any publicly owned business, at least 51 percent of the stock is owned by one ore more women; and whose management and daily business operations are controlled by one or more women.

(b) *Representation.* [Complete only if the offeror is a women-owned business concern and has not represented itself as a small business concern in paragraph (b)(1) of FAR 52.219-1, Small Business Program Representations, of this solicitation.] The offeror represents that it ☐ is not a women-owned business concern.

3. FAR 52.204-6 **Data Universal Numbering System (DUNS) Number (APR 1998)**

(a) The offeror shall enter, in the block with its name and address on the cover page of its offer, the annotation "DUNS" followed by the DUNS number that identifies the offeror's name and address exactly as stated in the offer. The DUNS number is a nine-digit number assigned by Dun and Bradstreet Information Services.

(b) If the offeror does not have a DUNS number, it should contact Dun and Bradstreet directly to obtain one. A DUNS number will be provided immediately by telephone at no charge to the offeror. For information on obtaining a DUNS number, the offeror, if located within the United States, should call

(1) Company name.
(2) Company address.
(3) Company telephone number.
(4) Line of business.
(5) Chief executive officer/key manager
(6) Date the company was started.
(7) Number of people employed by the company.
(8) Company affiliation.

Offerors located outside the United States may obtain the location and phone number of the local Dun and Bradstreet information Services office from the Internet Home Page at http://www.dnb.com/. If an offeror is unable to locate a local service center, it may send an e-mail to Dun and Bradstreet at globalinfo@mail.dnb.com.

**4. FAR 52.219-1 Small Business Program Representation (MAY 1999) Alternate II (NOV 1999)**

(a) (1) The standard industrial classification (SIC) code for this acquisition is ______.
(2) The small business size standard is $__________.
(3) The small business size standard for a concern which submits an offer in its own name, other than on a construction or service contract, but which proposes to furnish a product which it did not itself manufacture, is 500 employees.

(b) Representations. (1) The offeror represents as part of its offer that it ☒ is, ☐ is not a small business concern.

(2) *[Complete only if offeror represented itself as a small business concern in paragraph (b)(1) of this provision.]* The offeror represents, for general statistical purposes, that it ☒ is, ☐ is not a small disadvantaged business concern as defined in 13 CFR 124.1002.

(3) *[Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.]* The offeror represents as part of its offer that it ☒ is, ☐ is not a women-owned small business concern.

(4) [Reserved]

(5) *[Complete if offeror represented itself as disadvantaged in paragraph (b)(2) of this provision.]* The offeror shall check the category in which its ownership falls:

______ Black American.
______ Hispanic American
__X__ Native American (American Indians, Eskimos, Aleuts, or Native Hawaiians).
______ Asian-Pacific American (persons with origins from Burma, Thailand, Malaysia, Indonesia, Singapore, Brunei, Japan, China, Taiwan, Laos, Cambodia (Kampuchea), Vietnam, Korea, The Philippines, U.S. Trust Territory of the Pacific Islands (Republic of Palau), Republic of the Marshall Islands, Federated States of Micronesia, the Commonwealth of the Northern Mariana Islands, Guam, Sanoa, Macao, Hong Kong, Fiji, Tonga, Kiribati, Tuvalu, or Nauru).
______ Subcontintent Assian (Asian-Indian) American (persons with origins from India, Pakistan, Bangladesh, Sri Lanka, Bhutan, the Maldives Islands, or Nepal).
______ Individual/concern, other than one of the preceding.

(c) *Definitions.*

"Small business concern," as used in this provision, means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR Part 121 and the size standard in paragraph (a) of this provision.

"Woman-owned small business concern," as used in this provision, means a small business concern—
(1) Which is at least 51 percent owned by one or more women or, in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more women; and
(2) Whose management and daily business operations are controlled by one or more women.

3

the source of the end items to be furnished.

(2) Under 15 U.S.C. 645(d), any person who misrepresents a firm's status as a small, small disadvantaged, or women-owned small business concern in order to obtain a contract to be awarded under the preference programs established pursuant to sections 8(a), 8(d), 9, or 15 of the Small Business Act or any other provision of Federal law that specifically references section 8(d) for a definition of program eligibility, shall--

(i) Be punished by imposition of fine, imprisonment, or both;
(ii) Be subject to administrative remedies, including suspension and debarment; and
(iii) Be ineligible for participation in programs conducted under the authority of the Act.

**5. FAR 52.219-19 Small Business Concern Representation for the Small Business Competitiveness Demonstration Program (JAN 1997)** *(Complete if procurement is being made under the Small Business Competitive Demonstration Program)*

(a) Definition.

"Emerging small business" as used in this solicitation, means a small business concern whose size is not greater than 50 percent of the numerical size standard applicable to the standard industrial classification code assigned to a contracting opportunity.

(b) (Complete only if the Offeror has represented itself under the provision at 52.219-1 as a small business concern under the size standards of this solicitation.)

The Offeror ☐ is, ☒ is not an emerging small business.

(c) (Complete only if the Offeror is a small business or an emerging small business, indicating its size range.) Offeror's average annual gross revenue for the last 3 fiscal years. (Check one of the following.)

**Avg. Annual Gross Revenues**
_____ **$1 million or less**
_____ **$1,000,001 - $2 million**
_____ **$2,000,001 - $3.5 million**
_____ **$3,500,001 - $5 million**
_____ **$5,000,001 - $10 million**
_____ **$10,000,001 - $17 million**

**6. FAR 52.219-22 Small Disadvantaged Business Status (Oct 1999)** *(complete if offer exceeds $100,000 in amount and the acquisition is not set aside for small business concerns).*

(a) General. This provision is used to assess an offeror's small disadvantaged business status for the purpose of obtaining a benefit on this solicitation. Status as a small business and status as a small disadvantaged business for general statistical purposes is covered by the provision at FAR 52.219-1, Small Business Program Representation.

(b) Representations.

(1) General. The offeror represents, as part of its offer, that it is a small business under the size standard applicable to this acquisition; and either--

☒ (i) It has received certification by the Small Business Administration as a small disadvantaged business concern consistent with 13 CFR 124, Subpart B; and

(B) Where the concern is owned by one or more disadvantaged individuals, the net worth of each individual upon whom the certification is based does not exceed $750,000 after taking into account the applicable exclusions set forth at 13 CFR 124.104(c)(2); and

(C) It is identified, on the date of its representation, as a certified small disadvantaged business concern in the database maintained by the Small Business Administration (PRO-Net); or

☐ (ii) It has submitted a completed application to the Small Business Administration or a Private Certifier to be certified as a small disadvantaged business concern in accordance with 13 CFR 124, Subpart B, and a decision on that application is pending, and that no material change in disadvantaged ownership and control has occurred since its application was submitted.

(2) ☐ For Joint Ventures. The offeror represents, as part of its offer, that it is a joint venture that complies with the requirements at 13 CFR 124.1002(f) and that the representation in paragraph (b)(1) of this provision is accurate for the small disadvantaged business concern that is participating in the joint venture. [The offeror shall enter the name of the small disadvantaged business concern that is participating in the joint venture: ______________________________.]

(c) Penalties and Remedies. Anyone who misrepresents any aspects of the disadvantaged status of a concern for the purposes of securing a contract or subcontract shall:

(1) Be punished by imposition of a fine, imprisonment, or both;

(2) Be subject to administrative remedies, including suspension and debarment; and

(3) Be ineligible for participation in programs conducted under the authority of the Small Business Act.

Alternate I (Oct 1998) *(Applies only in solicitations for acquisitions for which small disadvantaged business procurement mechanisms are authorized on a regional basis)* (3) Address. The offeror represents that its address ☒ is, ☐ is not in a region for which a small disadvantaged business procurement mechanism is authorized and its address has not changed since its certification as a small disadvantaged business concern or submission of its application for certification. The list of authorized small disadvantaged business procurement mechanisms and regions is posted at http://www.arnet.gov/References/sdbadjustments.htm. The offeror shall use the list in effect on the date of this solicitation. "Address" as used in this provision, means the address of the offeror as listed on the Small Business Administration's register of small disadvantaged business concerns or the address on the completed application that the concern has submitted to the Small Business Administration or a Private Certifier in accordance with 13 CFR part 124, subpart B. For joint ventures, "address" refers to the address of the small disadvantaged business concern that is participating in the joint venture.

**7. FAR 52.209-5 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, PROPOSED DEBARMENT, AND OTHER RESPONSIBILITY MATTERS (MAR 1996)**

(a) (1) The Offeror certifies to the best of its knowledge and belief, that--

(i) The Offeror and/or any of its Principals--

(A) Are ☐ are not ☒ presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency;

(B) Have ☐ have not ☒, within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with

embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, or receiving stolen property; and

(C) Are ☐ are not ☒ presently indicted for, or otherwise criminally or civilly charged by a government entity with, commission of any of the offenses enumerated in subdivision (a)(1)(i)(B) of this provision.

(ii) The Offeror has ☐ has not ☒, within a three-year period preceding this offer, had one or more contracts terminated for default by any Federal agency.

(2) "Principals," for the purposes of this certification, means officers; directors; owners; partners; and, persons having primary management or supervisory responsibilities within a business entity (e.g., general manager; plant manager; head of a subsidiary, division, or business segment, and similar positions). THIS CERTIFICATION CONCERNS A MATTER WITHIN THE JURISDICTION OF ANY AGENCY OF THE UNITED STATES AND THE MAKING OF A FALSE, FICTITIOUS, OR FRAUDULENT CERTIFICATION MAY RENDER THE MAKER SUBJECT TO PROSECUTION UNDER SECTION 1001, TITLE 18, UNITED STATES CODE.

(b) The Offeror shall provide immediate written notice to the Contracting Officer if, at any time prior to contract award, the Offeror learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

(c) A certification that any of the items in paragraph (a) of this provision exists will not necessarily result in withhold of an award under this solicitation. However, the certification will be considered in connection with a determination of the Offeror's responsibility. Failure of the Offeror to furnish a certification or provide such additional information as requested by the Contracting Officer may render the Offeror nonresponsible.

(d) Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render, in good faith, the certification required by paragraph (a) of this provision. The knowledge and information of an Offeror is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

(e) The certification in paragraph (a) of this provision is a material representation of fact upon which reliance was placed when making award. If it is later determined that the Offeror knowingly rendered an erroneous certification, in addition to other remedies available to the Government, the Contracting Officer may terminate the contract resulting from this solicitation for default.

**8. FAR 52.222-22 Previous Contracts and Compliance Reports (FEB 1999)** *(complete if offer exceeds $10,000 in amount).*

The offeror represents that --

(a) It ☒ has, ☐ has not, participated in a previous contract or subcontract subject to the Equal Opportunity clause of this solicitation,

(b) It ☒ has, ☐ has not, filed all required compliance reports; and

(c) Representations indicating submission of required compliance reports, signed by proposed subcontractors, will be obtained before subcontract awards.

**9. FAR 52.203-2 CERTIFICATE OF INDEPENDENT PRICE DETERMINATION (APR 1985)**

(a) The offeror certifies that--

those prices, (ii) the intention to submit an offer, or (iii) the methods or factors used to calculate the prices offered;

(2) The prices in this offer have not been and will not be knowingly disclosed by the offeror, directly or indirectly, to any other offeror or competitor before bid opening (in the case of a sealed bid solicitation) or contract award (in the case of a negotiated solicitation) unless otherwise required by law; and

(3) No attempt has been made or will be made by the offeror to induce any other concern to submit or not to submit an offer for the purpose of restricting competition.

(b) Each signature on the offer is considered to be a certification by the signatory that the signatory—

(1) Is the person in the offeror's organization responsible for determining the prices being offered in this bid or proposal, and that the signatory has not participated and will not participate in any action contrary to subparagraphs (a)(1) through (a)(3) of this provision; or

(2) (i) Has been authorized, in writing, to act as agent for the following principals in certifying that those principals have not participated, and will not participate in any action contrary to subparagraphs (a)(1) through (a)(3) of this provision Bradley Johnson Env. Mgr (insert full name of person(s) in the offeror's organization responsible for determining the prices offered in this bid or proposal, and the title of his or her position in the offeror's organization);

(ii) As an authorized agent, does certify that the principals named in subdivision (b)(2)(i) of this provision have not participated, and will not participate, in any action contrary to subparagraphs (a)(1) through (a)(3) of this provision.

(iii) As an agent, has not personally participated, and will not participate, in any action contrary to subparagraphs (a)(1) through (a)(3) of this provision.

(c) If the offeror deletes or modifies subparagraph (a)(2) of this provision, the offeror must furnish with its offer a signed statement setting forth in detail the circumstances of the disclosure.

**10. FAR 52.203-11 CERTIFICATION AND DISCLOSURE REGARDING PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (APR 1991) (DEVIATION)**

(a) The definitions and prohibitions contained in the clause, at FAR 52.203-12, Limitation on Payments to Influence Certain Federal Transactions, included in this solicitation, are hereby incorporated by reference in paragraph (b) of this certification.

(b) The offeror, by signing its offer, hereby certified to the best of his or her knowledge and belief that on or after December 23, 1989,—

(1) No Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress on his or her behalf in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment or modification of any Federal contract, grant, loan or cooperative agreement;

(2) If any funds other than Federal appropriated funds (including profit or fee received under a covered Federal transaction) have been paid, or will be paid, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress on his or her behalf in connection with this solicitation, the offeror shall complete and submit, with its offer, OMB standard form LLL, Disclosure of Lobbying Activities, to the Contracting Officer; and

(3) He or she will include the language of this certification in all subcontract awards at any tier and require that all recipients of subcontract awards in excess of $100,000 shall certify and disclose accordingly.

under this provision or who fails to file or amend the disclosure form to be filed or amended by this provision, shall be subject to a civil penalty of not less than $10,000, and not more than $100,000, for each such failure.

11. FAR 52.223-4 RECOVERED MATERIAL CERTIFICATION (OCT 1997)

As required by the Resources Conservation and Recovery Act of 1976 (42 U.S.C. 6962(c)(3)(A)(i), the offeror certifies, by signing this offer, that the percentage of recovered materials to be used in the performance of the contract will be at least the amount required by the applicable contract specifications.

12. FAR 52.223-13 CERTIFICATION OF TOXIC CHEMICAL RELEASE REPORTING (OCT 1995)

(a) Submission of this certification is a prerequisite for making or entering into this contract imposed by Executive Order 12969, August 8, 1995.

(b) By signing this offer, the offeror certifies that--

(1) As the owner or operator of facilities that will used in the performance of this contract that are subject to the filing and reporting requirements described in section 313 of the Emergency Planning and Community Right-To- Know Act of 1986 (EPCRA) (42 U.S.C. 11023) and section 6607 of the Pollution Prevention Act of 1990 (PPA) (42 U.S.C. 13106), the offeror will file and continue to file for such facilities of the life of the contract the Toxic Chemical Release Inventory From (Form R) as described in Section 313 (a) and (g) of EPCRA and section 6607 of PPA; or

(2) None of its owned or operated facilities to be used in the performance of this contract is subject to the Form R filing and reporting requirements because each such facility is exempt for at least one of the following reasons: (Check each block that is applicable.)

☒ (i) The facility does not manufacture, process or otherwise use any toxic chemicals listed under section 313(c) of EPCRA, 42 U.S.C. 11023(c).

☒ (ii) The facility does not have 10 or more full-time employees as specified in section 313(b)(1)(A) of EPCRA, 42 U.S.C. 11023(b)(1)(A).

☒ (iii) The facility does not meet the reporting thresholds of toxic chemicals established under section 313(f) of EPCRA, 42 U.S.C. 11023(f) (including the alternate thresholds at 40 CFR 372.27, provided an appropriate certification form has been files with EPA).

☒ (iv) The facility does not fall within Standard Industrial Classification Code (SIC) designations 20 through 39 as set forth in section 19.102 of the Federal Acquisition Regulation; or

☒ (v) The facility is not located within any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin islands, the Northern Mariana islands, or any other territory or possession over which the United States has jurisdiction.

13. COMPLIANCE WITH VETERANS REPORTING REQUIREMENTS (GSA ACQUISITION LETTER MV-99-1, JAN 12, 1999)

(a) The Offeror represents that, if it is subject to the reporting requirements of 38 U.S.C. 4212(d) (i.e. the VETS-100 report required by the Federal Acquisition Regulation clause 52.222-37, Employment Reports on Disabled Veterans and Veterans of the Vietnam Era), it has ☒, has not ☐ submitted the most recent report required by 38.U.S.C. 4212(d).

(b) An Offeror who checks "has not" may not be awarded a contract until the required reports are filed (31 U.S.C. 1354).

NOTE: Information on filing the VETS-100 Report may be found on the internet at address: http://www.dol.gov/dol/vets/public/contractor/main.htm

The offeror represents that the following persons are authorized to negotiate on their behalf with the Government in connection with this request for proposals:

| Name | Title | Telephone Number |
|---|---|---|
| Bradley O. Johnson | Environmental Manager | 918-245-5500 |
| Lori A. Johnson | President | 918-245-5500 |
| | | |