IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TIGER NATURAL GAS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 03-2201C |
| | ) | (Judge Lettow) |
| v. | ) | |
| | ) | |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Tiger Natural Gas, Inc. ("Tiger") respectfully opposes Defendant's Motion to Dismiss. As authority for the Motion to Dismiss, Defendant cites RCFC 12(b)(6), which provides for dismissal for failure to state a claim upon which relief can be granted. Yet Defendant has not addressed and cannot meet the standard for decision under the rule it cited. Furthermore, the Court may not decline jurisdiction based on the authority cited by Defendant. Additionally, Tiger is entitled to interest in this action under the Contract Disputes Act ("CDA"). Therefore, the Motion to Dismiss should be denied and the Court should award interest to Tiger running from the date of the offsets of Tiger's invoices to the date of payment to Tiger.

## I. FACTS

In May 2000, GSA issued a Notice Concerning Solicitation seeking the installation of a propane backup system to reduce utility costs at GSA's Fort Worth Federal Center (hereinafter described as "the propane backup system"). Complaint, ¶4. GSA represented that it would qualify for an interruptible, industrial gas rate as a result of installation of the propane backup system instead of the higher commercial rate GSA was

paying at the time under the tariff of TXU Electric and Gas Corporation ("TXU")[1]. Complaint, ¶¶4-5. In June 2000, as required by the Notice, Tiger submitted to GSA its proposals setting forth the estimates of savings to be realized by GSA due to the installation of the propane backup system. Complaint, ¶6. In July and August 2000, in response to two letters sent by GSA asking whether Tiger could guarantee such savings to GSA, Tiger stated that it could not make such a guarantee. Complaint, ¶¶7-8.

In October 2000, GSA awarded to Tiger the contract for installation of the propane backup system. Complaint, ¶9. On March 21, 2001, Tiger completed installation of the propane backup system. Complaint, ¶10. Tiger was paid in full by GSA under the terms of the contract. Complaint, ¶10.

In July 2001, GSA refused to enter into contracts with TXU for industrial gas service and interruptible rates. Complaint, ¶13. Upon information and belief, GSA never switched to an interruptible, industrial gas rate. Complaint, ¶14. Any cost savings not realized by GSA are a result of its own failure to obtain an interruptible, industrial gas rate. Complaint, ¶25.

In July 2002, citing Tiger's contract, GSA sent a letter to Tiger advising that GSA had not realized the "guaranteed savings" allegedly represented by Tiger and demanded payment of $37,296.73 from Tiger for savings allegedly not realized as of the date of the letter. Complaint, ¶15. Thereafter, Tiger sent a letter to GSA attempting to resolve the dispute. Complaint, ¶16.

On September 19, 2002, GSA contracting officer Carol Lautzenheiser issued her final decision (i) interpreting the contract between GSA and Tiger to find that Tiger provided a savings guarantee as to the installation of the propane backup system; and (ii)

[1] TXU is the local utility that supplies gas to the Fort Worth Federal Center.

demanding $39,783.17 pursuant to the alleged guarantee covering the period of April 2001 to the date of the letter. See Exhibit 1. In March 2003, to satisfy the demand, GSA offset payments from funds owed to Tiger on unrelated GSA invoices. Complaint, ¶18. After these offset funds were released, GSA again offset funds on August 7, 2003, August 8, 2003, August 11, 2003, August 21, 2003, and August 26, 2003. See Exhibit 2.

On September 17, 2003, Tiger filed its Complaint seeking declaratory judgment with the United States of Federal Claims. In the jurisdictional averments, Tiger invoked the CDA, 41 U.S.C. § 609, and the Tucker Act, 28 U.S.C. § 1491. Complaint, ¶¶2-3. Tiger also alleged that it did not guarantee any cost savings to GSA as a result of installation of the propane backup system. Complaint, ¶23. Tiger sought an order relieving it from any liability to GSA for any cost savings allegedly not realized as a result of the propane backup system. Complaint, ¶26. Additionally, in the Request for Relief, Tiger sought interest and costs including reasonable attorneys' fees.

On March 29, 2004, the GSA contracting officer sent a letter to Tiger stating, "I will withdraw my initial final decision to the extent that I am releasing the offset…." See Exhibit 3. The contracting officer added, "I wish to emphasize that this letter is in no way a concession of our positions regarding the proper interpretation of the contract." Id.

## II. ARGUMENT

### A. Defendant's 12(b)(6) Motion Should be Denied

#### 1. Standard for Decision

A federal court's review of a complaint on a motion to dismiss is a limited one, focusing not on whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Southern California Edison v. United

States, 58 Fed.Cl. 313, 320-321 (2003)(citations omitted). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id. at 321 (citations omitted). Under Rule 12(b)(6), a court must accept as true the facts alleged in the complaint, and must construe all reasonable inferences in favor of the non-movant. Id.

2. Tiger is Entitled to Offer Evidence to Support Its Claims

Applying the standard for decision set forth above, Tiger quite plainly has stated a claim upon which relief can be granted despite Defendant's voluntary payment. Contrary to the contracting officer's final decision finding that Tiger made a savings guarantee, Tiger alleges that it made no such guarantee. Tiger further alleges that GSA may not rely on its own failure and omission to act as a basis for recovering from Tiger (i.e. the failure to switch to an industrial, interruptible rate). Accepting Tiger's allegations as true and construing all reasonable inferences in Tiger's favor, the Court may not dismiss this case under RCFC 12(b)(6).

In the Motion to Dismiss, Defendant now concedes that the Court has subject matter jurisdiction over Tiger's claim. See Mot. to Dismiss at 3. Indeed, in Plaintiff's Opposition to Defendant's Motion to Stay Proceedings, which Tiger incorporates by reference as if fully set forth herein, Tiger amply demonstrated that the Court has the authority to decide Tiger's request for nonmonetary relief under the Tucker Act despite GSA's release of the offset. Pl.'s Opp. to Def.'s Mot. to Stay at 2-4. Although Tiger has received the monetary relief it initially sought, Tiger still may seek a declaratory judgment as to its nonmonetary disputes regarding the final decision. See 28 U.S.C. §

1491(a)(2); Information Systems & Networks Corporation v. United States, 48 Fed.Cl. 265, 268 (2000) *citing* Emery Worldwide Airlines, Inc. v. United States, 47 Fed.Cl. 461, 468 (2000)(A complaint for declaratory judgment appealing a denial of claims by a contracting officer's final decision falls within the court's jurisdiction over nonmonetary claims). While Defendant may find it prudent not to adjudicate this case, Tiger is entitled to present evidence in support of its claims. Southern California Edison, 58 Fed.Cl. 313, 320-321.

Moreover, to meet the heavy burden of establishing mootness, Defendant must show that there is no justiciable case or controversy in this case. Emery Worldwide Airlines, Inc., 47 Fed.Cl. at 469. Yet, as is conceded on page 3 of Defendant's own Motion to Dismiss, Tiger could have brought its declaratory judgment claim standing alone. By now, Defendant ought to fully abandon its argument that Tiger is seeking novel relief or trying to greatly expand the Court's authority over nonmonetary claims. Therefore, as a matter of law, Tiger's claim of entitlement to a declaratory judgment survives.

### B. Defendant's Citations to Authority Do Not Support the Motion to Dismiss

Defendant cited three cases in support of its argument that the Court should decline jurisdiction. Rather than supporting Defendant's Motion to Dismiss, these cases further substantiate Tiger's position.

In Alliant Techsystems v. United States, 178 F.3d 1260 (Fed. Cir. 1999), the Federal Circuit observed that the Court of Federal Claims is not required to issue a declaration of rights "whenever a contractor raises a question of contract interpretation *during the course of contract performance.*" Id. at 1271 (emphasis added). "*In*

*responding to such a request*, the court or board is free to consider the appropriateness of declaratory relief." Id. (emphasis added). However, this Court is not responding to a request for declaratory relief *during contract performance*.

In the present case, contract performance has been complete since March 21, 2001. Complaint, ¶10. Tiger was paid in full at that time. Complaint, ¶10. Accepting these facts as true under the case law cited above, Alliant does not support Defendant's request that the Court decline to hear this case. Jurisdiction under the Tucker Act is strictly defined, such that courts are "not empowered to engraft additional limitations on the Court of Federal Claims' exercise of its jurisdiction." See Sartori v. United States, 58 Fed.Cl. 358, 360 (2003) *quoting* Martinez v. United States, 333 F.3d 1295, 1306 (Fed.Cir. 2003)(en banc). Given that Tiger has pled jurisdiction under the Tucker Act and contract performance is complete, this case must go forward.

Since the other cases cited by Defendant rely on Alliant to decline jurisdiction, Tiger need not address the remainder of Defendant's arguments. However, out of an abundance of caution, Tiger demonstrates below why Tiger meets the Alliant framework in any event and distinguishes the Defendant's cases below.

The Alliant factors are (i) whether the claim involves a live dispute between the parties; (ii) whether a declaration will resolve that dispute; and (iii) whether the legal remedies available to the parties would be adequate to protect the parties' interests. Alliant Techsystems, 178 F.3d at 1271.

One, based on the GSA contracting officer's letter maintaining that Tiger made a savings guarantee, there clearly is a live dispute. See Exhibit 3. While the contracting officer has decided to release the money offset, she steadfastly but incorrectly believes

that the contract contains a savings guarantee. Id. Tiger flatly disagrees. As such, there is a fundamental question of contract interpretation at issue here. Alliant Techsystems, 178 F.3d at 1271. Contrary to Defendant's assertions, Tiger is not merely seeking advice regarding a theoretical dispute. Tiger is seeking to undo the contracting officer's final decision regarding the contract interpretation.

Two, although Defendant did not fully discuss the Alliant factors, there does not appear to a dispute that a declaration would resolve this dispute. This Court can set forth the contract rights of the parties.

Three, absent this case, there are no legal remedies available to Tiger. More than one year has passed since the contracting officer issued her final decision. As a result, Tiger cannot challenge the decision outside this proceeding. See 41 U.S.C. § 609. Additionally, the government has the broad right of setoff. See *e.g.* Johnson v. All-State Const., Inc., 329 F.3d 848, 852 (Fed. Cir. 2003); Applied Companies v. United States, 144 F.3d 1470, 1475 (Fed. Cir. 1998). In 2003, the contracting officer used this authority to offset funds from Tiger's GSA invoices on at least 6 separate instances. If Tiger is precluded from challenging the underlying final decision, Tiger will not have the right to challenge future offsets under the guarantee still claimed by the contracting officer. If this case is dismissed, Tiger will be without a remedy.

In Hamilton Securities Advisory Services, Inc. v. United States, 2004 WL 583717 (Fed. Cl. March 24, 2004), also cited by Defendant, this Court found that there was no special need for early resolution of a legal issue. Id. at *14. Specifically, in that case, the plaintiff filed a motion for declaratory judgment as to one of its claims just prior to trial. Id. at *13. Noting that the trial was scheduled on April 14, 2004, or approximately 3

weeks after the publication of the Memorandum Opinion, this Court declined to issue a declaration of rights because legal remedies were available to protect the parties' interest. See Id. at *14. As discussed above, Tiger's final opportunity to resolve this dispute is to gain declaratory relief through this case. There are no legal remedies available to Tiger.

Further, it is unclear why Defendant contends that Tiger is seeking "early" resolution of this issue. Contract performance was completed more than 3 years ago. More than 19 months have passed since the GSA contracting officer issued her final decision finding that Tiger made a savings guarantee to GSA. Since the Court is aware of the extensions and stay sought by Defendant in this case, Tiger will omit a recitation of these delays here. Ultimately, resolution of this dispute is long overdue.

Defendant also cited Zimmerman v. HBO Affiliate Group, 834 F.2d 1167, 1170 (3d Cir. 1987), to support the Motion to Dismiss. In Zimmerman, a plaintiff brought suit for declaratory judgment under the Federal Communications Act after interpreting a letter sent by defendants as threatening legal action against plaintiff for merely owning an unauthorized antenna capable of receiving HBO programming. Id. at 1170. However, the district court found the absence of a genuine dispute since no party to the litigation had ever made such an assertion and thus declined to render a declaratory judgment. Id. In other words, the plaintiff misinterpreted whether there was a dispute. In the instant case, the GSA contracting officer has left no doubt that there is a genuine dispute by virtue of her final decision and her letter dated March 29, 2004, expressly reaffirming her final decision regarding contract interpretation. As such, there is a real question of conflicting legal interests as required by Zimmerman. Id. at 1170. Therefore, Tiger has brought an actionable claim.

**C. Tiger Is Entitled to Interest**

The CDA is the statute authorizing the Government to pay interest on the released offset. See 41 U.S.C. § 611. Interest is an adjunct to an underlying claim with respect to the principal liability. Essex Electro Engineers, Inc. v. United States, 22 Cl.Ct. 757, 766 (1991). In order for a contractor to be entitled to interest, there need only be an underlying claim for quantum governed by the CDA. See Santa Fe, Inc. v. United States, 13 Cl.Ct. 464, 468 (1987). That is the case here.

By the Complaint, Tiger invoked the CDA to challenge the final decision of the contracting officer and seek the release of all funds offset by GSA from Tiger's invoices. Complaint, ¶28. On March 29, 2004, the contracting officer voluntarily released the amounts offset. As a result, it follows that the contracting officer "found due" the amounts released for the purposes of the CDA. See 41 U.S.C. § 611. As such, interest "shall be paid to the contractor from the date the contracting officer receives the claim … until payment thereof." Id. This interest must be paid in accordance with the provisions of 48 C.F.R. § 33.208.

The contracting officer does not need to wait to be compelled by a judicial finding to release the interest owed to Tiger. Rather, the contracting officer must release the interest just as she released the offset.

Based on the foregoing, Defendant's Motion to Dismiss should be denied and Tiger should be awarded interest by the Court. The contracting officer plainly has not conceded liability as to her contract interpretation finding a savings guarantee. Therefore, Tiger has the right to challenge the final decision before this Court.

DATED this 10th day of May, 2004.

Respectfully submitted,

______________________

s/ Sandeep Kathuria
General Counsel
Tiger Natural Gas, Inc.
1422 East 71st Street, Suite J
Tulsa, OK 74136
(918) 491-6998 (telephone)
(918) 491-6659 (facsimile)
skathuria@tigernaturalgas.com