# Board of Contract Appeals

General Services Administration
Washington, D.C. 20405

DISMISSED FOR LACK OF JURISDICTION: July 16, 2003

GSBCA 16039

TIGER NATURAL GAS, INC.,

Appellant,

v.

GENERAL SERVICES ADMINISTRATION,

Respondent.

J. Kevin Hayes and Pamela S. Anderson of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, counsel for Appellant.

Amanda Wood, Office of General Counsel, General Services Administration, Washington, DC; and John Wright Carlisle, Office of Regional Counsel, General Services Administration, Fort Worth, TX, counsel for Respondent.

Before Board Judges **DANIELS** (Chairman), **PARKER**, and **WILLIAMS**.

**DANIELS**, Board Judge.

The respondent, the General Services Administration (GSA), moves the Board to dismiss for lack of jurisdiction an appeal filed by Tiger Natural Gas, Inc. (Tiger). GSA maintains that the appeal was filed too late for the Board to consider it. We agree with GSA's argument and grant its motion.

Background

In October 2000, GSA awarded to Tiger a contract for the installation of a propane backup system at the Fort Worth (Texas) Federal Center. Complaint ¶¶ 1, 6, Exhibit I; Answer ¶¶ 1, 6.

By decision dated September 19, 2002, a GSA contracting officer claimed that Tiger owed GSA $39,783.17 under the contract. Appeal File, Exhibit 15 at 1-2. The contracting officer sent this decision to counsel for Tiger via a commercial courier service, Federal

Express, on September 19. Id. at 3. The decision was received by counsel on September 23. Id., Exhibit 16 at 3; Respondent's Motion to Dismiss for Lack of Jurisdiction, Exhibit A.

On Thursday, December 19, 2002, Tiger's counsel gave a package containing a notice of appeal of this decision to Federal Express for delivery to the Board on the next day. The Federal Express airbill affixed to the package contained the Board's street address. It did not contain the Board's room number or telephone number, though the airbill has sufficient space to list a room number (which appellant's counsel did list on the copy of the notice sent to respondent's counsel) and has a space specifically designated for the recipient's telephone number. Appellant's Response to Respondent's Motion to Dismiss for Lack of Jurisdiction at 1, Exhibit A; Respondent's Reply to Appellant's Response to the Motion to Dismiss for Lack of Jurisdiction, Exhibit B.

A Federal Express courier has provided a declaration with regard to delivery of this package. According to this declaration, after reviewing her company's records as to the delivery –

> On December 20, 2002, I proceeded with the subject package (as well as numerous other packages), to the GSA Building. . . . [I]t is my belief I proceeded with the subject package to various offices within the Board of Contract Appeals (including but not limited to room 7022 [the Office of the Clerk of the Board]) to attempt delivery of the package. I cannot, at this time, recall specifically with whom I spoke regarding that package. However, it is my belief that I was physically present with the subject package within the offices of the Board of Contract Appeals (including but not limited to room 7022) on December 20, 2002, and made a final delivery attempt for that package at 3:44.p.m. [sic] that day. I was unable to complete delivery, however, because without a specific recipient name, no party I spoke to within those offices would accept service of the package, since no specific person at the Board of Contract Appeals was named as recipient.
>
> I made subsequent similar delivery attempts to the Board of Contract Appeals on December 23, 2002 at 4:27 p.m., December 24, 2002 at 12:55 p.m., December 26, 2002 at 1:25 p.m., and December 27, 2002 at 11:21 a.m. In each case, I was unable to complete delivery because of the inability to locate a party willing to accept shipment without a specific recipient name.
>
> On December 30, 2002 at 11:48 a.m., I was able to locate a party at the Board of Contract Appeals offices willing to accept shipment of the package . . . and delivery was completed.

Supplement to Appellant's Sur-reply to Respondent's Motion to Dismiss for Lack of Jurisdiction, Exhibit B (Revised Declaration of Patricia Curtis (Apr. 17, 2003) (Curtis Declaration)).

On December 27, 2002 – before the Federal Express courier had completed her peregrinations – Tiger filed with the Board, by facsimile transmission, a notice of appeal of this decision.

On July 1, 2003, the Board convened a hearing to take testimony from the courier regarding the matters discussed in her declaration. The Board also allowed counsel for the parties to make oral argument at the conclusion of the hearing.

The courier testified that the declaration had actually been prepared by counsel for Tiger, based on three-way conversations she had had with the courier and a Federal Express paralegal. Transcript at 8-9. The courier said that she had no particular recollection about the package in question. Id. at 23, 42. She testified in some detail, however, about her general practices regarding the delivery of packages to the building in which the Board is located.

The courier stated that she delivered packages in the building for a year, from March 2002 to February 2003. Transcript at 6, 21-22. During that time, she followed pretty much the same routine each day. Id. at 42. When a package, such as the one at issue here, was addressed to the Board of Contract Appeals, but no specific individual, she did not know which of the several boards of contract appeals in the building was the correct recipient. Id. at 39-40. She would therefore ask for assistance from persons she encountered in the hallway of one of the boards. Id. at 12, 41. Among those individuals was a board of contract appeals employee, Ms. Franklin. Id. at 39-40.

The courier additionally testified that on her route through the building, she regularly went by the Office of the Clerk of the Board. Transcript at 13. When the door to this office was closed or "cracked open," or when the Clerk was conversing with someone, however, she did not attempt to deliver packages there. Id. at 31-32, 40, 42. She would then return later in the same day, or on the next day, to attempt delivery again. Id. at 32, 40. Delivery was often difficult, however, the courier testified, because she often found the Clerk's Office closed as early as 2:30 or 3:00 p.m. Id. at 42.

The Federal Express tracking record for the package which concerns us here includes one entry of code "08" – "not in/business closed" – for each of December 20, 23, 24, 26, and 27, 2002. Curtis Declaration, Attachment at 1-4. The courier testified that she would type code "08" into the tracking record when a package is undeliverable because the suite or telephone number is not on the airbill, or because a recipient is unavailable or a business is closed. Transcript at 19, 24, 25, 44-45. She would use code "07" when a recipient categorically refuses to accept delivery of a package. Id. at 25. She testified that she never used code "07" with respect to this package because delivery of the package was never actually refused by a recipient. Id. at 30.

With regard to the number of boards of contract appeals in the building in which this Board is housed, there is only one such board. With regard to the individuals allegedly consulted by the courier, the Board does not now and did not in December 2002 have an employee named Franklin. With regard to the time at which the Clerk's Office is closed, the Board's Rules of Procedure specify that this office is open for the purpose of receiving papers submitted for filing "from 8:00 a.m. to 4:30 p.m., Eastern Time, on each day that is not a Saturday, Sunday, federal holiday, a day on which the Office is required to close earlier than 4:30 p.m., or a day on which the Office does not open at all, as in the case of inclement weather." Rule 138(a) (48 CFR 6101.38(a) (2002)).

## Discussion

The Contract Disputes Act of 1978 provides: "Within ninety days from the date of receipt of a contracting officer's decision . . . , the contractor may appeal such decision to an agency board of contract appeals." 41 U.S.C. § 606 (2000).

As we have recently explained:

> The deadline for filing an appeal is unforgiving; it has been strictly construed by the Court of Appeals for the Federal Circuit because the authorization to make the filing is a waiver of sovereign immunity. As that court has held, "If no appeal to the Board is taken within the ninety day statutory period set forth in section 606, the Board has no jurisdiction to hear the claim." D. L. Braughler Co. v. West, 127 F.3d 1476, 1480 (Fed. Cir. 1997) (citing Cosmic Construction Co. v. United States, 697 F.2d 1389, 1390 (Fed. Cir. 1982)). The Board has consistently followed the court's directive by dismissing for lack of jurisdiction appeals which are filed more than ninety days after the filers received the subject contracting officer decisions. E.g., Mid-South Metals, Inc. v. General Services Administration, GSBCA 15702, 02-1 BCA ¶ 31,723 (2001); D. L. Woods Construction, Inc. v. General Services Administration, GSBCA 13882, 97-2 BCA ¶ 29,009 (1996); Wood & Co. v. Department of the Treasury, GSBCA 12452-TD, 94-1 BCA ¶ 26,395 (1993).

Ray Communications, Inc. v. General Services Administration, GSBCA 16056, 03-1 BCA ¶ 32,175, at 159,078; see also Shane Fast v. General Services Administration, GSBCA 16068, 03-1 BCA ¶ 32,209, at 159,299.

The ninetieth day after the date on which Tiger's representative received the contracting officer's decision was December 22, 2002. Because December 22 fell on a Sunday, the Board's Rules of Procedure allowed a filing on the next working day. Rule 102(c) (48 CFR 6101.2(c) (2002)). Thus, Monday, December 23, was the last day on which Tiger's notice of appeal could have been filed in a timely fashion.

Under our Rules, a notice of appeal "is filed upon the earlier of (A) its receipt by the Office of the Clerk of the Board or (B) if mailed, the date on which it is mailed." Rule 101(b)(5)(i). Tiger's notice of appeal was not mailed – rather, it was sent by both a commercial courier service and facsimile transmission – so the date of its filing is the date of its receipt by the Office of the Clerk of the Board. The first receipt occurred on December 27, 2002 – four days after the last day for timely filing. We therefore have no jurisdiction to hear the case.

Tiger has attempted to avoid this conclusion by asserting that its "attempts to physically deliver the Notice of Appeal to the Board of Contract Appeals were refused on Friday, December 20, 2002, Monday, December 23, 2002, [and three subsequent dates]." Appellant's Response to Respondent's Motion to Dismiss for Lack of Jurisdiction at 1; see also Transcript at 50 (counsel's argument that "the evidence is that Appellant's Notice of Appeal was physically presented to someone in Room 7022 but was refused"). This assertion, according to the appellant, could lead to a conclusion that the appeal was timely

filed under either of two theories. The first of these theories is that the notice of appeal should be construed as having been filed on December 20 or December 23 because, having been carried by the courier, it was in the Board's offices on those days. The second is that the Board should follow Ishay v. City of New York, 178 F. Supp. 2d 314 (E.D.N.Y. 2001), and hold that the time for filing the appeal should be extended because of the "unusual circumstance" that Tiger was physically prevented from filing the notice earlier than it did.

We do not accept either of these theories. Rule 101(b)(5)(i) provides that a notice of appeal not mailed to the Board is filed on its receipt by the Office of the Clerk of the Board. "Receipt" means taking possession or delivery of something. Webster's Third New International Dictionary 1894 (1986). There is no evidence that the Clerk ever took possession of the notice of appeal until she received the facsimile transmission on December 27. Although the courier may have been in the neighborhood of the Clerk's Office on December 20 and 23, while carrying the package which contained the notice of appeal, the evidence does not show conclusively that she ever attempted to give that package to the Clerk. The courier's testimony shows that she was confused as to some basic facts which she, as the maker of deliveries to the Board for nearly a year, should have known – the number of boards of contract appeals in the building, the identity of individuals employed by this Board, and the hours of the Office of the Clerk. Most important, the courier's testimony makes clear that no employee of the Board – in the Clerk's Office or elsewhere – ever refused to accept the package which contained Tiger's notice of appeal. Instead, the courier's testimony as a whole indicates that it was more likely than not that she did not present it to anyone in the Clerk's Office – perhaps because she chose not to open the door or interrupt the Clerk's conversation. The "neighborhood play," in which a shortstop "forces out" a runner at second base by taking a throw near, but not at the base, sometimes deceives an umpire in baseball. See Official Rule of Major League Baseball 7.08(e) ("A runner is out when . . . [h]e fails to reach the next base before a fielder tags him or the base, after he has been forced to advance by reason of the batter becoming a runner.") (emphasis added), available at http://mlb.mlb.com/NASApp/mlb/mlb/baseball_basics/mlb_basics_runner.jsp. The neighborhood play does not work here, though. If the Clerk does not take possession or delivery of a document, that document is not filed, even if a courier carries it near the Clerk's Office.

The theory founded on Ishay v. City of New York requires more analysis. The plaintiff in that case had prevailed in a suit in federal court, and under the Federal Rules of Appellate Procedure, the defendant had until September 13, 2001, to file a notice of appeal or a motion for an extension of time in which to file such a notice. Due to the destruction of the World Trade Center on September 11, the defendant's lawyers were unable to get access to their office, files, and computers until October 19. They moved for an extension of time on October 23. The district court granted the motion on the ground that the "unique circumstances" doctrine applied.

This doctrine was first enunciated by the Supreme Court in Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215 (1962) (per curiam). There, the district court had granted the petitioner an extension of time greater than permitted by the Federal Rules of Civil Procedure in which to appeal. The motion judge found that the petitioner had shown "excusable neglect based on a failure of a party to learn of the entry of the judgment," per Federal Rule of Civil Procedure 73(a). The petitioner filed the appeal within the time

allowed by the court, but beyond the time permitted by the Rules. The Supreme Court, considering the "great hardship" to the party who relied on the district court's ruling, allowed the appeal to be heard on its merits. In so doing, the Court said: "Whatever the proper result as an initial matter on the facts here, the record contains a showing of unique circumstances sufficient that the Court of Appeals ought not to have disturbed the motion judge's ruling." Id. at 217 (emphasis added). Justice Harlan dissented.

In the next two years, the Court invoked the "unique circumstances" doctrine twice more, on both occasions in circumstances somewhat similar to those in Harris Truck Lines. Wolfsohn v. Hankin, 376 U.S. 203 (1964) (per curiam); Thompson v. Immigration & Naturalization Service, 375 U.S. 384 (1964) (per curiam). In both of these cases, four justices – Clark, Harlan, Stewart, and White – dissented. Justice Clark, in views subscribed to by these justices, expressed concern that the Court was giving trial judges the power to break rules which were in their own words "mandatory and jurisdictional." 375 U.S. at 389; 376 U.S. 203.

The Supreme Court has never invoked the "unique circumstances" doctrine again. It has mentioned the doctrine only two more times. In 1988, Justice Scalia discussed it in a dissent to which Justices Rehnquist, O'Connor, and Kennedy subscribed. He considered that later cases, which enforced filing deadlines strictly, "effectively repudiate the Harris Truck Lines approach." Houston v. Lack, 487 U.S. 266, 282 (1988). A year later, a unanimous Court preserved the doctrine, but limited its application: "By its terms, Thompson applies only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done." Osterneck v. Ernst & Whinney, 489 U.S. 169, 179 (1989).

The appellate courts have construed the doctrine in the limited context specified by the Supreme Court in Osterneck, but even there have found it inapplicable unless the appellant's reliance on the district court's action was reasonable. Panhorst v. United States, 241 F.3d 367, 372-73 (4th Cir. 2001); Feinstein v. Moses, 951 F.2d 16, 20 (1st Cir. 1991); Pinion v. Dow Chemical, U.S.A., 928 F.2d 1522, 1532 (11th Cir. 1991); Kraus v. Consolidated Rail Corp., 899 F.2d 1360, 1365 (3d Cir. 1990); Parke-Chapley Construction Co. v. Cherrington, 865 F.2d 907, 913-14 (7th Cir. 1989). The Court of Appeals for the Federal Circuit has addressed the subject once, and there, consistent with the holdings of other appellate courts, held that "counsel's alleged reliance on the alleged statement [by the trial court] was not warranted." Kraft, Inc. v. United States, 85 F.3d 602, 609 (Fed. Cir.), clarified, 96 F.3d 1428 (Fed. Cir. 1996).

It is clear from this analysis that Ishay v. City of New York is not applicable to the instant case. We will apply the "unique circumstances" doctrine only in the circumstances specified by the Supreme Court – "where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done" – and only where the party has demonstrated reasonable reliance on that assurance. Plainly, these conditions were not met here. The Board gave no assurance that a late-filed appeal would be considered on its merits. No reliance, reasonable or otherwise, was possible.

A line of cases more appropriate to Tiger's attempt to persuade us to accept its notice of appeal as timely might be the line in which late bids were held to be timely because the paramount cause of the lateness was Government mishandling. See, e.g., Computer Literacy World, Inc. v. Department of Agriculture, GSBCA 11767-P, 92-3 BCA ¶ 25,112; Rocky Mountain Trading Co., GSBCA 8671-P, 87-1 BCA ¶ 19,406 (1986). Even there, however, a party's assertions as to Government mishandling have been defeated where the party hired a commercial courier service to deliver the bid package and did not provide the service with a complete address or failed to note the need for delivery by a particular time. SYS v. National Aeronautics & Space Administration, GSBCA 12154-P, 93-2 BCA ¶ 25,582, reconsideration denied, 93-2 BCA ¶ 25,652 (1992); Fidelipac Corp., GSBCA 11102-P, 91-2 BCA ¶ 23,932; Robinson & Robinson, GSBCA 10247-P, 90-1 BCA ¶ 22,434 (1989).

While the bid-mishandling cases come closer to the mark than either of the theories advanced by Tiger, they do not help Tiger, either. One immediate cause of the late filing was, as we have found, not any refusal by the Office of the Clerk to accept a package tendered to it, but rather, the failure of appellant's agent – the courier – to make timely delivery. Tiger's counsel contributed to the predicament, as well. The Federal Express airbill which contained Tiger's notice of appeal was incompletely addressed. Although our Rules of Procedure specify the room number of the office which accepts filings (the Office of the Clerk of the Board, room 7022), Rule 101(b)(5)(i), (f), the airbill contained sufficient space for the placement of a room number, and Tiger's counsel knew how to place a room number in the address block (they did it for the package that went to Government counsel), the airbill did not include a room number. Additionally, although our Rules specify the Clerk's telephone number ((202) 501-0116), and the airbill contained a space for the recipient's phone number, the airbill did not include the Clerk's phone number. Thus, Tiger's counsel failed to provide information which would have helped the courier find the place where delivery was appropriate. Furthermore, although counsel knew or should have known that they had given the notice of appeal to Federal Express close to the deadline for filing, counsel did not monitor the progress of their agent in making delivery. As a result, although there was sufficient time for taking corrective action when the courier's first attempt failed, counsel did not take it.

We finally note that counsel's choice of the means of filing was a significant contributing factor to the late filing. The Board's Rules of Procedure envision three alternative means of filing – by mail, facsimile transmission, and hand. If Tiger had attempted to file by either of the first two methods, it could have been assured of timely filing. A notice of appeal sent to the Board via the United States Postal Service is considered filed on the date on which it is mailed, and a postmark is prima facie evidence of the date of mailing. Rule 101(b)(5)(i). Had Tiger placed the notice in the mail on the day it gave the notice to Federal Express for courier delivery (or on any of the next four days), it would have filed on time. The Postal Service's postmark would have been proof of timely filing. A notice of appeal sent by facsimile transmission is filed upon the Board's receipt of the entire printed submission. Rule 101(b)(5)(ii). Had Tiger sent the notice by fax on any of those five days – as it did four days after that – it would also have filed on time. Counsel chose neither of these alternatives, however. Instead, they decided to have an agent make delivery by hand. That choice led to the unfortunate adventure that resulted in filing too late for us to take jurisdiction over the case.

The Contract Disputes Act of 1978 permits a contractor to contest a contracting officer's decision in either of two forums – the appropriate agency board of contract appeals (within ninety days from the date of the contractor's receipt of the decision) or the United States Court of Federal Claims (within twelve months from that date). 41 U.S.C. §§ 606, 609(a) (2000). Tiger's determination to file its notice of appeal with the Board does not constitute a binding election of forum because the Board lacks jurisdiction over the appeal. Bonneville Associates v. United States, 43 F.3d 649, 653 (Fed. Cir. 1994); National Neighbors, Inc. v. United States, 839 F.2d 1539, 1542-43 (Fed. Cir. 1988); Olsberg Excavating Co. v. United States, 3 Cl. Ct. 249, 252 (1983); Diversified Systems Resources, Ltd., GSBCA 9493-P, 88-3 BCA ¶ 20,897, at 105,653; Elaine Dunn Realty, HUDBCA 98-C-101-C1, 98-1 BCA ¶ 29,581, at 146,640.

Decision

Respondent's motion to dismiss the appeal for lack of jurisdiction is granted. The appeal is **DISMISSED FOR LACK OF JURISDICTION**.

STEPHEN M. DANIELS
Board Judge

We concur:

ROBERT W. PARKER
Board Judge

MARY ELLEN COSTER WILLIAMS
Board Judge